OPINION
Defendant-appellant Delbert Morris, Jr., appeals from a judgment awarding plaintiffs-appellees Andrew and Pam Gordon $2,559.27 in compensatory and punitive damages, attorney fees, and interest with respect to the Gordons' conversion claim against Morris. Morris argues that, among other things, the trial court erred by: (1) finding in favor of the Gordons on their conversion claim, because the Gordons had abandoned the rental premises and any personal property located therein when they arranged to have the utilities shut off five days prior to the end of the monthly rental period; (2) finding that the Gordons had given him adequate notice of their decision to terminate their month-to-month tenancy, and therefore were not liable for an additional month's rent; and (3) awarding the Gordons punitive damages, because they failed to prove that he had acted with actual malice.
We conclude that the trial court did not err in finding for the Gordons on their conversion claim. The Gordons did not abandon the rental premises and their personal belongings located therein merely because they arranged to have the utilities shut off at the rental premises five days before the end of the monthly rental period. Morris unlawfully locked them out of their premises before the Gordons even had an opportunity to return their keys to him. We further conclude that while the trial court did err in finding that the Gordons had provided Morris with adequate notice of their intention to terminate their month-to-month tenancy, the trial court correctly refused to award Morris an additional month's rent, because Morris himself had terminated the parties' month-to-month lease by unlawfully locking the Gordons out of the rental premises, so that the Gordons were no longer obligated to fulfill their contractual or statutory obligations at that point. We also conclude that the trial court did not err in awarding the Gordons punitive damages and attorney fees, because Morris repeatedly ignored or evaded the Gordons' requests that they be permitted to retrieve their personal belongings, until the legal proceedings the Gordons were forced to initiate against him were well underway. Accordingly, the judgment of the trial court is Affirmed.
 I
Morris had been friends with the Gordons for a long time, having dated Mr. Gordon's sister for more than twenty years. In 1995, the Gordons were having trouble finding a home to rent because they owned a German shepherd puppy. Morris helped the Gordons by buying the residential property located at 125 Whiteman Street in Xenia, Ohio, and renting it to them for $500 per month.
In June, 1998, the Gordons decided to purchase their own home. After talking with a realtor, the Gordons told Morris that they were considering buying their own home, that they had been pre-approved for a home loan, and that they "would be moving probably around October." At the end of September, 1998, the Gordons informed Morris that they had looked at a home and put a bid on it, but would not know anything until the homeowners got back to them. On October 9, 1998, the Gordons learned that the homeowners had agreed to the sale. The parties arranged to sign the paperwork on October 14th. On October 11, 1998, Mrs. Gordon told Morris that they would be moving out by the end of the month, and that he was to keep their $500 security deposit as rent for the month of October, which the Gordons had not yet paid.
The Gordons arranged to have the gas, electricity, and water turned off at the premises on October 26th. The Gordons removed some of their belongings from the premises from October 23rd to October 26th. When the Gordons returned to the premises on October 27th to finish removing their belongings, including their refrigerator, stove, and work clothes, they discovered that Morris had changed the locks on the property. The Gordons contacted Morris later that evening. Morris told them he would allow them to retrieve their property at 8:00 p.m. on October 28th. However, when Mr. Gordon returned to the premises with several friends on October 28th, Morris failed to show up. On October 29th, Mr. Gordon drove to Morris' residence and pulled up behind Morris' car as Morris was leaving. Morris told Gordon that his cousin had just passed away and that he would get back to him about retrieving his belongings. After Morris failed to contact the Gordons as promised, the Gordons tried to contact him on numerous occasions to seek the return of their property, but to no avail.
On December 1, 1998, the Gordons filed a complaint against Morris in the Small Claims Division of the Xenia Municipal Court, alleging that Morris had wrongfully retained their personal property; the Gordons sought $3000 in damages. Morris responded by filing an answer, counterclaim, and motion to transfer the case to the municipal court's regular docket. On December 31, 1998, the matter was transferred to the regular docket of the municipal court. On April 1, 1999, the Gordons, with leave of court, filed an amended complaint alleging that Morris had wrongfully deprived them of their personalty in violation of R.C. 5321.15, or had committed conversion of their personalty in violation of the common law, and seeking compensatory and punitive damages, and attorney fees. On April 19, 1999, Morris filed an answer to the Gordon's amended complaint; however, he did not restate his counterclaim in that answer. On April 20, 1999, Morris returned the Gordons' personal property to them. Morris had transported the property to a storage facility where he had kept it until returning it to the Gordons.
The matter proceeded to trial on September 10, 1999. The Gordons testified to the facts set forth above. Morris testified that the Gordons never provided him with any notice that they were leaving the premises, and that he had learned only from a third party on October 14th that they were leaving at the end of the month. Morris also testified that, among other things, the carpeting in the premises was ruined and had to be replaced.
On October 15, 1999, the trial court issued a decision finding in favor of the Gordons on their conversion claim. The trial court awarded no compensatory damages to the Gordons, but did award them $1,000 in punitive damages, $1,462.50 in attorney fees, and ten percent interest from October 27, 1998. After noting that Morris failed to raise a counterclaim in his answer to the Gordons' amended complaint, the trial court found that Morris had no counterclaim pending before the court.
Morris appealed from the trial court's October 15th judgment entry to this court, arguing, among other things, that the trial court erred in failing to rule on his counterclaims. In Gordon v. Morris (June 30, 2000), Greene App. No. 99CA109, unreported, this court held that the trial court did err in finding that Morris' counterclaims were not pending before it, and further held that because the trial court had not ruled on Morris' counterclaims, its October 15th judgment entry was no longer a final appealable order. This court also recommended that the trial court "consider whether the judgment it entered for the Gordons should be revised to award compensatory damages in a nominal amount to permit the award of punitive damages on their conversion claim that the court entered."
On July 12, 2000, the trial court issued a Judgment Entry on Remand, revising its previous October 15, 1999 judgment entry by awarding the Gordons $96.77 in compensatory damages for the five days they were locked out of the rental premises at the end of October, 1998. The trial court also ruled against Morris on his counterclaims, finding, among other things, that the carpet stains were "completely foreseeable and normal wear and tear[,]" and that the Gordons gave Morris "adequate notice" that they were leaving at the end of October, 1998, and thus were not liable for the November, 1998 rent, as Morris had argued.
Morris appeals from the trial court's July 12th judgment entry.
 II
Morris' First Assignment of Error states:
 THE COURT'S DECISION FINDING AGAINST THE DEFENDANT'S COUNTERCLAIM AND FOR THE PLAINTIFFS ON THEIR COMPLAINT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
Morris argues that the trial court's decision finding in favor of the Gordons on their conversion claim and against him on his counterclaims was against the manifest weight of the evidence. Morris also argues that the trial court erred in awarding the Gordons $96.77 in compensatory damages because those damages were never pled, argued, nor proved.
In both civil and criminal proceedings, the credibility of the witnesses and the weight to be given the evidence presented are matters primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. Because the trial court is able to observe the witnesses' demeanor, gestures and voice inflections, and use those observations in weighing the credibility of their testimony, deference must be paid to the trial court's findings of fact. Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80. "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." C.E. Morris Co. v. Foley Construction Co. (1978), 54 Ohio St.2d 279, syllabus.
"Conversion is the wrongful control or exercise of dominion over property belonging to another inconsistent with or in denial of the rights of the owner." Tabar v. Charlie's Towing Serv., Inc. (1994),97 Ohio App.3d 423, 427. In order to prove the conversion of property, the owner must demonstrate that he demanded the return of the property from the possessor after the possessor exerted dominion or control over the property, and that the possessor refused to deliver the property to its rightful owner. Id. at 427-428.
Morris argues that the trial court erred in finding for the Gordons on their conversion claim because the Gordons abandoned the rental premises where their personal property was located by arranging to have the utilities shut off, and, therefore, abandoned the personal property itself, as well. We disagree.
Abandoned property "is property over which the owner has relinquished all right, title, claim, and possession with the intention of not reclaiming it or resuming its ownership, possession, or enjoyment." Doughman v. Long (1987), 42 Ohio App.3d 17, 21. In order to prove that property has been abandoned, it must be shown that the owner intended to abandon the property, and engaged in acts or omissions implementing that intent. Hamilton v. Harville (1989), 63 Ohio App.3d 27, 30.
Here, there is evidence in the record that the Gordons told Morris that they would vacate the premises by the end of October. The trial court found that testimony credible. Morris had the locks on the premises changed on October 26th, before the Gordons even had an opportunity to surrender the keys to him. When the Gordons discovered that they had been locked out of the premises, they immediately made efforts to gain entry into the premises in order to retrieve their belongings. Under these circumstances, it could not reasonably be found that the Gordons intended to abandon their personal property, based upon the fact that they arranged to have the utilities shut off at the rental premises several days prior to the end of the month.
In the alternative, Morris argues that the trial court erred in finding that he had converted the Gordons' property because the evidence shows it was always his intent to return it. Again, we disagree.
Wrongful purpose or intent is not a necessary element of conversion; thus, a defendant is liable even if he is acting under a misapprehension or mistake. Fulks v. Fulks (1953), 95 Ohio App. 515, 518-519. However, a defendant's motive in converting property is relevant where, as here, "exemplary" or punitive damages are sought. Baltimore Ohio Ry. Co. v. O'Donnell (1892), 49 Ohio St. 489, paragraph five of the syllabus.
Here, there was evidence presented showing that Morris deliberately ignored or evaded the Gordons' repeated attempts to have their property returned to them, and did not return the Gordons' property until the legal proceedings that the Gordons initiated to secure the return of their belongings were well underway.
Morris also contends that the trial court erred by awarding the Gordons $96.77 in compensatory damages for the last five days of October, 1998, during which they were locked out of the premises. Morris asserts that these damages were "never proved, plead [sic], or argued by the Plaintiffs."
Morris' contention that the damages regarding the five days in which the Gordons were locked out of the premises had to be specifically pled in the Gordons' complaint implicates the distinction between "general" and "special" damages. General damages are those that "necessarily result from the injury complained of[.]" 30 Ohio Jurisprudence 3d (1999) 171, Damages, Section 138. General damages "are presumed to flow from the injury and may be alleged in a lump sum, even though the pleader sets out with particularity different items of injuries for which the plaintiff claims damages." Id. (Footnotes omitted.) Special damages, on the other hand, "do not follow as a necessary consequence of the claimed injury, and they must be specially stated." 30 Ohio Jurisprudence 3d (1999) 171-172, Damages, Section 139. Special damages are "occasioned by a special character, condition, or circumstance of a person wronged[.]" Id. "[N]o recovery can be had for special damages not pleaded." Id.
The Gordons alleged in their amended complaint that Morris "wrongfully and unlawfully seized possession of [the rental] premises from Plaintiffs, changing the locks and excluding Plaintiffs from occupancy." The loss of the value of the rental premises from October 27, 1998 to October 31, 1998 necessarily resulted from Morris' locking them out; consequently, this loss represents a general damage that did not have to be specifically alleged in the complaint.
Morris also faults the trial court for finding against him with respect to two of his counterclaims. The first involved Morris' contention that the Gordons were liable to him for $500 for the November, 1998 rent, because they failed to provide him with thirty days notice of their intent to terminate their month-to-month lease with him as required under R.C. 5321.17(B).
The trial court found that Morris was not entitled to the November, 1998 rent because he had been given adequate notice by the Gordons that they would be leaving by the end of October, 1998. The trial court also noted that "[i]t is interesting that although Defendant clearly locked the Plaintiffs out of the home on October 26, he tried to assert a claim in court that he was entitled for [sic] November rent."
Initially, we disagree with the trial court's finding that the Gordons provided Morris with adequate notice that they were terminating the lease. Notice of termination of a periodic tenancy must unequivocally inform the other party that the tenancy will be terminated as of a certain date. Reith v. Skruck (1995), 71 Ohio Misc.2d 1, 2. Here, there is evidence in the record showing that the Gordons informed Morris in June, 1998 that they "would be moving probably around October." (Emphasis added.) There is also evidence in the record showing that the Gordons told Morris at the end of September, 1998 that they "had put a bid in on a home [but] that [they] wouldn't know anything on it until" the sellers contacted them. The sellers did not contact the Gordons until October, 1998. Neither of the statements that the Gordons made to Morris in June and September of 1998 unequivocally informed Morris of their intent to terminate their month-to-month tenancy. In fact, the Gordons did not tell Morris that they were "definitely leaving" until October 11, 1998.
Nevertheless, we agree with the trial court's decision not to award Morris rent for the month of November, 1998. The Gordons would not have been obligated to pay the November rent until November 1, 1998. By locking the Gordons out of the premises on October 26, 1998, Morris effectively terminated his month-to-month lease with the Gordons, thereby extinguishing any contractual or statutory duties of the Gordons that they were not already obligated to perform.
Morris' second counterclaim was for pet stains left on the carpet which Morris alleges required the carpet to be replaced. In support of his argument, Morris points to a written statement from what he describes as an "independent, disinterested" carpet cleaning agency, admitted into evidence without objection. The statement noted that there were pet stains throughout the carpet, that the stains were permanent, and that the carpet needed to be replaced. However, other evidence presented showed that Morris knew the Gordons had a dog; indeed, he had bought the house for them so that they could keep it. Furthermore, there was evidence presented to support the trial court's finding that Morris knew the dog was harbored inside the home, yet did not object to it. Additionally, the Gordons testified that any stains left on the carpet were from normal wear and tear, and their testimony was corroborated by several witnesses. Under these circumstances, we cannot reverse, on weight of the evidence grounds, the trial court's finding that any stains on the carpet were foreseeable, and constituted normal wear and tear.
Morris' First Assignment of Error is overruled.
 III
Morris' Second Assignment of Error states:
 THE COURT ERRED IN GRANTING PUNITIVE DAMAGES AND ATTORNEY FEES.
Morris argues that the trial court erred in awarding punitive damages because it failed to make an award of compensatory damages to the Gordons with respect to their conversion claim. Morris further argues that the trial court erred in awarding punitive damages and attorney fees because the Gordons failed to establish actual malice on his part. We disagree with both of Morris' arguments.
"Punitive damages are intended to deter conduct resulting from a mental state that is `so callous in its disregard for the rights and safety of others that society deems it intolerable.'" Ward v. Hengle (1997),124 Ohio App.3d 396, 405, quoting Calmes v. Goodyear Tire Co. (1991),61 Ohio St.3d 470, 473. A party seeking punitive damages has the burden of proving by clear and convincing evidence that he is entitled to them. Cabe v. Lunich (1994), 70 Ohio St.3d 598, 601. Punitive damages may be awarded only where "actual damages" have been awarded, id., and "actual malice" on the part of the tortfeasor has been shown. Rice v. CertainTeed Corp. (1999), 84 Ohio St.3d 417, 422. "Actual damages" is a term "often used to denote either `compensatory' or `nominal' damages." Quillet v. Johnson (1947), 34 Ohio Op. 308, 309. Compensatory damages are those that measure the actual loss to the injured party and are designed to make him whole again. Fantozzi v. Sandusky Cement Prod. Co. (1992),64 Ohio St.3d 601, 612. Nominal damages are "those recoverable where a legal right is to be vindicated against an invasion thereof which has produced no actual loss of any kind, or where, from the nature of the case, some injury has been done, the extent of which the evidence fails to show." Lacey v. Laird (1956), 166 Ohio St. 12, paragraph two of the syllabus. Nominal damages "are limited to some small or nominal amount in terms of money." Id. "Actual malice, necessary for an award of punitive damages, is (1) that state of mind under which a person's conduct is characterized by hatred, ill will, or a spirit of revenge, or a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm." Preston v. Murty (1987),32 Ohio St.3d 334, 335. (Emphasis sic.) Attorney fees may be awarded as an element of compensatory damages in cases where punitive damages are warranted. Zoppo v. Homestead Ins. Co. (1994), 71 Ohio St.3d 552, 558. A trial court may award attorney fees where the tortfeasor "has acted in bad faith, vexatiously, wantonly, obdurately or for oppressive reasons." Buller v. Respicare, Inc. (1987), 39 Ohio App.3d 17.
In Gordon, supra, this court suggested that the trial court consider revising its judgment to award compensatory damages in a nominal amount to permit the award of punitive damages on the Gordons' conversion claim. The trial court responded by awarding the Gordons $96.77 in compensatory damages for Morris' act of locking the Gordons out of the rental premises, by which Morris deprived the Gordons of the value of the rental property for the final five days in October, 1998, and, at the same time, unlawfully exercised dominion and control over the Gordons' personal property. The trial court's award of compensatory damages was lawful for the reasons discussed in our response to Morris' First Assignment of Error.
There was also sufficient evidence in the record to support a finding of actual malice on Morris' part in converting the Gordons' personalty. As noted earlier, once the Gordons discovered they had been locked out, they made repeated attempts to retrieve their property; Morris responded to these attempts with evasion and delay, and did not return the Gordons' property until the legal proceedings they were forced to initiate to secure the return of their belongings were well underway. Additionally, the trial court found that:
 the absurdity [sic] of the attempts of the Plaintiffs to try to get their property and the Defendant's unwillingness to exert any effort to get that property to them until approximately six months later is an outrage. Defendant adopted a pose in court of lack of knowledge that the Plaintiffs were attempting to retrieve the property. The Court does not believe that pose.
We conclude that there is sufficient evidence in the record to support the trial court's award of punitive damages and attorney fees in this case.
Morris' Second Assignment of Error is overruled.
 IV
Both of Morris' assignments of error having been overruled, the judgment of the trial court is Affirmed.
GRADY and YOUNG, JJ., concur.